IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY T. MYERS, | ) |
| Plaintiff, | ) Civil Action 20-900 |
| vs. | ) |
| FAYETTE COUNTY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Jeffrey T. Myers ("Myers") brings this civil rights action pursuant to 42 U.S.C § 1983 against Defendant Fayette County. Myers alleges that Fayette County retaliated against him in violation of his First Amendment right to familial association.

Currently pending before the Court is Fayette County's Motion to Dismiss (ECF No. 5). For the reasons that follow, its motion will be granted without prejudice.

### I. Procedural History

Myers commenced this action in June 2020. The Complaint invokes federal question jurisdiction, 28 U.S.C. § 1331, over the sole civil rights claim, in which Myers alleges that he was improperly placed on administrative leave and later terminated based upon his familial association with his father, the warden of the Fayette County Prison. On August 20, 2020, Fayette County moved to dismiss the Complaint (ECF No. 5) and its motion has been fully briefed (ECF Nos. 6, 11).

### II. Factual Allegations

Myers began his employment with Fayette County on or about February 24, 2019 as a sergeant at the Fayette County Prison. Myers's father is also employed by Fayette County as the

warden of the Fayette County Prison. (Compl. ¶¶ 9-10.)

Myers alleges that throughout his employment at the Fayette County Prison, multiple staff members made frequent negative comments regarding his familial association with his father. In or about November of 2019, Myers was falsely accused of failing to record when officers left their shifts early. Myers believes that this accusation was made in retaliation for his familial association. After an investigation, Fayette County found the accusation against Myers to be false. (*Id.* ¶¶ 11-14.)

On or about February 13, 2020, the prison board of Fayette County held a special meeting and informed Myers's father that he was not permitted to be involved in his capacity as warden with any discipline directed to Myers. The next day, Myers was reprimanded for an incident in which an officer who was overseen by Myers left a cutdown tool in a prisoner's cell. On or about April 30, 2020, Myers was notified that his schedule was being changed as a result of an investigation. (*Id.* ¶¶ 15-17.) Thereafter, Myers was informed that he was being investigated by human resources and/or the prison board for sexual harassment allegations. (*Id.* ¶ 18.)

On or about May 4, 2020, Myers was subjected to a disciplinary hearing. At this hearing, Myers was accused of several sexual harassment allegations, some of which he contends were materially false. While Myers admitted to some of the other allegations against him, including hugging a female officer, he alleges that the conduct to which he admitted was of the same type and/or kind in which other employees of Fayette County engaged without consequence. Myers was then placed on administrative leave by Fayette County's prison board pending an investigation. (*Id.* ¶¶ 19-21.) At that time, the prison board acted as a decision-maker for Fayette County and possessed final authority in establishing policies regarding appropriate and lawful procedures at Fayette County Prison including, but not limited to, employment procedures such as

the investigation of employees. (*Id.* ¶ 22.) Throughout the investigation of Myers, he was never provided with any details regarding the individual who reported the allegations against him, including those that were materially false. (*Id.* ¶ 28.)

Myers is aware of similar sexual harassment allegations against other employees at Fayette County Prison. These employees were not investigated by Fayette County's prison board and/or human resources or placed on administrative leave by Fayette County as a result of allegations against them. According to the Complaint, the investigation of the allegations against Myers was conducted by Fayette County in a demonstrably different manner than investigations of similar allegations against other employees. Furthermore, those allegations to which Myers admitted were of the same type and/or kind of conduct in which other employees of Fayette County engaged without consequence. Myers alleges Fayette County knew of the aforementioned conduct of other employees but did not investigate and/or discipline these employees. Myers also contends that he was placed on administrative leave and investigated by the prison board and/or human resources in retaliation for his familial association with the warden. (*Id.* ¶¶ 23-27.)

On or about May 8, 2020, Myers was terminated. Myers is aware of against other employees at Fayette County Prison. Other employees against whom similar sexual harassment allegations were not terminated by the Fayette County. Myers states that there was no legitimate government interest in terminating him. Rather, he was investigated by Fayette County's prison board and/or human resources and terminated by Fayette County based on his familial association with the warden of Fayette County Prison. (*Id.* ¶¶ 29-34.)

### III. Standard of Review

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the

defendant, a court finds that defendant's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires the defendant to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Court of Appeals for the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a Rule 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged. If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted).

**IV.   Analysis**

The operative statute with respect to Myers's civil rights claims is 42 U.S.C. § 1983, which provides in relevant part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). *See also Baker*, 443 U.S. at 140; *Graham v. Connor*, 490 U.S. 386, 394 (1989).

Myers asserts that his civil rights claim is based upon the First Amendment. The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. Amend. 1. "First Amendment freedoms are protected by the Fourteenth Amendment from invasion by the States." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 907 n.43 (1982).

In the Complaint, Myers asserts that the right violated by Fayette County is his First Amendment right to be free from retaliation based on familial association. (Compl. ¶¶ 37, 38, 39.)

As Myers notes, while the First Amendment does not explicitly protect the freedom to associate, the Supreme Court has held that the right to associate is a fundamental right protected by the Constitution. *NAACP v. Alabama*, 357 U.S. 449, 460-61 (1958). It has recognized this right in "two distinct senses." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617 (1984).

> In one line of decisions, the court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties.

*Id.* at 617-18. In the Complaint, Myers alleges only the first kind of association; he does not allege that he and his father associated for the purpose of engaging in activities protected by the First Amendment.

As the Court of Appeals recently noted:

> Not every intimate relationship is constitutionally protected. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1204 (3d Cir. 1988) (discussing factors in determining whether a relationship has constitutional protection). The Constitution protects "certain kinds of highly personal relationships" with "a substantial measure of sanctuary from unjustified interference by the State." *Roberts*, 468 U.S. at 618, 104 S.Ct. 3244. These relationships include "those that attend the creation and sustenance of a family—marriage, ... the raising and education of children, ... and cohabitation with one's relatives." *Id.* at 619, 104 S.Ct. 3244. In these domains, a plaintiff must allege conduct that interferes "directly and substantially" with her right to form or maintain that intimate relationship. *See Zablocki v. Redhail*, 434 U.S. 374, 387, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978).

*Starnes v. Butler County Court of Common Pleas, 50th Judicial Dist.*, 971 F.3d 416, 431 (3d Cir. 2020).[1]

Myers cites *Gardner v. Barry*, 2010 WL 4853885, at *5 (M.D. Pa. Nov. 23, 2010), in support of his contention that protected intimate associations include familial relationships involving deep attachments and commitments and the sharing of personal aspects of one's life. In that case, Erin Lewis was a probation officer in Lebanon County. She was assigned to supervise Jeffrey Gardner, and eventually entered into an intimate relationship with him. Plaintiff alleged that upon learning of their relationship, Lebanon County officials retaliated against both of them. The court noted that the freedom to intimate associations includes the right to maintain such private relationships free of state intrusion and thus held that the plaintiff stated a claim under the First

---

[1] In *Starnes*, the Court of Appeals held that a judge who allegedly interfered with a woman's marriage to her boyfriend was entitled to qualified immunity because the right she identified was not clearly established. In *Rode*, the court held that the plaintiff's relationship with her brother-in-law was not afforded special constitutional protection. 845 F.2d at 1204-05.

Amendment

This case does not involve a married couple (a recognized "intimate association"), however, and Myers does not allege that Fayette County "directly and substantially interfered" with his relationship with his father, who is not a party in this case. Thus, the *Gardner* case is inapplicable.

Neither the Supreme Court nor the Court of Appeals for the Third Circuit has ever held that the relationship between an adult and his or her parent constitutes an "intimate relationship" for First Amendment purposes and the few cases in other courts that have discussed this issue have not supported this conclusion. Moreover, even the cases that have acknowledged that possibility have dismissed claims on the ground that the plaintiff did not allege that the defendant "directly and substantially interfered" with the relationship. *See Vanderhoff v. City of Nanticoke*, 2018 WL 4565673, at *5-6 (M.D. Pa. Sept. 24, 2018) (plaintiff did not have an "intimate association" with his cousin or father and did not allege that defendant directly interfered with his intimate association with his son); *Nittoli v. Morris County Bd. of Chosen Freeholders*, 2007 WL 1521490, at *7 (D.N.J. May 22, 2007) (father of adult daughter could not state a claim arising out of his firing because he did not allege that it interfered with this relationship); *Viarreal v. City of Espanola*, 2003 WL 27384777, at *4 & n.5 (D.N.M. Nov. 21, 2003) (noting that two circuits had recognized a claim where a spouse was discharged, in essence, for being married to a person toward whom the spouse's supervisor was antagonistic, but stating "it is not clear whether these circuits, or any other circuit, would recognize a claim such as plaintiff raises in this case, where an adult child no longer living with his parents claims a violation of his right to associate with those parents."). *See also Freebery v. Coons*, 589 F. Supp. 2d 409, 422 (D. Del. 2008), *aff'd mem.*, 355 F. App'x 645 (3d Cir. Dec. 10, 2009) (even assuming that the plaintiff's relationship with his sister

7

was constitutionally protected, he did not allege that his firing "directly interfered" with that relationship); *Trujillo v. Board of Comm'rs of Santa Fe County*, 768 F.2d 1186, 1190 (10th Cir. 1986) (mother and sister of adult man who died at county jail had an "intimate association" with him for First Amendment purposes, but the plaintiffs did not allege that the defendants had an intent to interfere with their particular relationship, which is required to state a claim).[2]

Both parties characterize the right at issue as the right to be free from retaliation based on First Amendment activity. A claim for retaliation for the exercise of First Amendment rights requires three things: a constitutionally protected activity, a governmental entity retaliating against the plaintiff and a causal relationship between the protected activity and the retaliation. *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004).

Myers contends that "only the protected activity element of the three part test is a question of law. The retaliation and causation requirements 'present questions for the fact finder and are not subject to review' at this stage." *Sposto v. Borough of Dickson City*, 2005 WL 3307333, at *3 (M.D. Pa. Dec. 6, 2005) (citing *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001)). *See also Watters v. City of Phila.*, 55 F.3d 886, 892 n.3 (3d Cir. 1995) (in claim of public employee for retaliation based on speech, second question—whether the speech was a substantial factor in the retaliatory action—and third question—whether the same actions would have been taken regardless—are for the jury); *Johnson v. Lincoln Univ.*, 776 F.2d 443, 454 (3d Cir. 1985) (same).

---

[2] In a related context, the Court of Appeals has held that a father could not state a claim under the Due Process Clause of the Fourteenth Amendment for the deprivation of his alleged protected liberty interest in the companionship, care, and affection of his independent adult son. *McCurdy v. Dodd*, 352 F.3d 820, 828-30 (3d Cir. 2003). The court also emphasized the fact that even though the action that led to the death of the son was intentional (he was shot by the police), it was not deliberately directed at the parent-child relationship.

However, Myers does not meet this first prong of this test because he fails to plead a protected activity that would implicate any First Amendment right. Rather, Myers claims that his First Amendment "protected activity" is simply his association with his father. He cites no authority in support of this proposition, however, and there appears to be no case law that acknowledges it. The cases on which he relies involve plaintiffs who engaged in speech, a clearly recognized protected activity for purposes of the First Amendment. *See Baldassare*, 250 F.3d at 195; *Watters*, 55 F.3d at 892.[3]

In its brief, Fayette County notes that "state action that incidentally affects the parent-child relationship is subject to minimum scrutiny, requiring only that the action rationally advance a legitimate government interest." *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 344 (3d Cir. 2004). It contends that "Plaintiff has the burden to overcome the presumption that the Defendant's action was rationally related to a legitimate government interest. In other words, the Court cannot find for Plaintiff unless the varying treatment of the Plaintiff is so unrelated to the achievement of any combination of legitimate purposes that the Court can only conclude Defendant's actions were irrational." (ECF No. 6 at 5.) Thus, Fayette County argues that if the challenged "action" in this case is its decision to exclude Myers's father from the disciplinary process concerning allegations made against him, Myers has not stated a claim because this decision was rationally based on the goal of avoiding the appearance that the prison board's review of his conduct was influenced by the presence of his father. At the same time, the gravamen of Myers's claim appears to different. He alleges that he was treated differently from similarly situated employees of the Fayette County Prison because his father is the warden. Therefore, he is not challenging the decision to remove

---

[3] Myers also cites *Arneault v. O'Toole*, 864 F. Supp. 2d 361, 382-83 (W.D. Pa. 2012), in which the court rejected the plaintiff's First Amendment retaliation claim on the ground that the alleged acts of speech were not made by him.

9

his father from the disciplinary board, but rather, claiming that he received disparate treatment because of that association.[4]

Nevertheless, as explained above, Myers's Complaint suffers from a fundamental flaw. Myers does not identify any support for the proposition that these circumstances create a claim for relief under any theory of First Amendment jurisprudence. He cites no authority to support his contention that the relationship between a father and an adult son constitutes an "intimate association" for First Amendment purposes, and he does not allege that he engaged in a "protected activity" that would create a claim under the First Amendment. While Myers relies on his familial association with his father, the Court is not persuaded in the absence of any supporting authority that the mere existence of this relationship represents a "protected activity" under the First Amendment. Therefore, he has not stated a claim for relief.

The Court of Appeals has held that:

> If a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Moreover, we have instructed that a district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id.* Accordingly, even when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Amendment is futile where "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

---

[4] Fayette County contends that Myers has not identified any other officers or supported his claim that they were similarly situated to him (i.e., that they were in supervisory positions or had been previously disciplined). However, Myers is not required to allege that level of detail to survive a motion to dismiss.

Because it is uncertain that amendment would be futile, Myers will be given leave to amend the Complaint.

## V. Conclusion

For the reasons set forth herein, Fayette County's motion to dismiss will be granted without prejudice. An appropriate order will follow.

Dated: October 13, 2020

BY THE COURT:

PATRICIA L. DODGE
United States Magistrate Judge